You may be seated. 3-11-0211, People of the State of Illinois, an affidavit by Don Duffy versus Sanjay Bhatia, Appellant and Stephen Richards. Mr. Richards? Thank you, Your Honor. Good morning, my name is Stephen Richards, and I represent the appellant in this case, Sanjay Bhatia. This case arose from Sanjay Bhatia's conviction for a retail theft. It was allegedly a retail theft of a television taken from a Sam's Club store, or allegedly taken. Sanjay Bhatia testified on his own behalf. He said that he had purchased one television, he hadn't taken two televisions, and he presented a very detailed account of what he had done that day and his movements. Now, it was the theory of the prosecution that, in fact, Sanjay Bhatia had purchased one television, had come back, and had somehow spirited a second television out, and therefore had two televisions instead of one. There were no witnesses to this alleged theft, or nobody saw him or conclusively showed that he, in fact, had taken two televisions out and had not simply taken one in for possible return and then taken it out again. So the critical evidence in the case, absolutely critical, was the surveillance tapes. Now, to understand the factual context, which, at least in my view, is somewhat unusual, you have to understand how the surveillance tapes and the taping system worked. And there was, during the motion to eliminate, there was discussion of this, and all parties agreed. Basically, Sam's Club had a VHS system. They had cameras all over the place, and the cameras would take pictures at certain intervals, and they would go on to VHS tapes, which would then be preserved. However, apparently, Sam's had a unique system of VHS. It wasn't like they would take their tapes and put it in an ordinary VHS recorder and play them. It was a special multiplex machine. It had to be specially coded in some way. And so after, when they suspected this had happened, they took out the VHS tape, the original, which are still in the record, and then they looked at them, or somebody looked at them, eventually somebody from the state police looked at them, and from an hour and a half of VHS tapes, the state police officer, Officer Henkel, pulled out four and a half minutes. So out of a total of an hour and a half of images, he pulls out four and a half minutes. Now what happens, what makes the case a case, and an issue, is this. Sometime afterwards, Sam's Club changed the coding system. And it was agreed by all parties that because they had changed the coding system, the original VHS tapes were unplayable and unviewable by anybody. As I said, they were admitted to evidence, but the jurors could not see them, the defense counsel couldn't see them, the prosecutors couldn't see them. So the evidence that was selected by the state police officer was the only evidence that the jury saw. He took four and a half minutes from the VHS tapes, put it on DVD tape, and that's what they saw. When did this conversion happen? Was it before or after the defendant's attorney asked to view them? As far as the record shows, it was after, it was before he asked to view them. And during the motion to eliminate, it was agreed by everybody that they were unviewable. The trial judge said something about can't we see if they can be made viewable, but that never happened. There was absolutely no evidence in the record that anyone did it, that they could be made viewable, that it was technically possible, that this could possibly happen. And in fact, the actual VHS tapes, the objects, went into evidence as objects, but as kind of like symbols because nobody could look at them. They were there, but nobody could see what was on them. Was there a request before the change was made, but it was disallowed and then the change was made? No. The change was made before, as far as, I think defense counsel had a standing request to view the tapes. And there was, by the time they got around, the state got around to acceding to the request, they said we can't view them and nobody can view them. And that's what was said at the motion to eliminate, that the change had been made at some point between the time of the alleged offense and the time of the motion to eliminate, which was a fair amount of time, a year and a half had passed, and nobody can view them, nobody can see anything. So at that point, the defense said we're moving to eliminate against the tapes on the grounds that we can't see them, we don't know why the four and a half minutes was selected, and there's no proper authentication for the videotapes because they've been edited by a law enforcement official severely, and we don't know what's on the rest, and that was the argument they made. And the trial judge, who's actually a different judge than the judge who actually presided over the trial, because there was a change of judges, he said no. He said basically they're coming in, and if you can figure out a way to view the rest of them, more power to you, but they're coming in, period. He definitively, absolutely rejected defense counsel's argument. Now there was then a change of defense counsel, a different defense counsel at trial. Now the state's argument with respect to waiver is that since defense counsel at trial stipulated to Henkel's testimony, which was basically that he looked at the tapes and that the conversion process was okay, and that the DVD images actively reflected things that were on the VHS tapes, which we don't dispute, that that was a sufficient foundation for the omission of the DVDs. But after trial, defense counsel, new defense counsel again, moved in a new trial for a new trial based upon the omission of the tapes and denial of the motion to eliminate. And at that point, the state made the same argument that they're making now, which is, oh, you didn't object to trial. Boy, I was in no objection to trial. But the law in Illinois is quite clear, and the state has not cited any cases to refute this, that where a criminal defendant moves to eliminate before trial or objects at trial and moves, nominates the issue or denominates the issue in a motion for new trial, the issue is preserved and not waived. That's black-letter law. So the fact that there was no objection at trial is, in our view, immaterial, and any argument based upon that has been waived because no contrary authority has been cited by the affilee. Now, the affilee also makes an argument that by stipulating to Hankel's testimony, the defendant somehow waived the issue of admissibility, and I think that makes absolutely no sense because it was clear that the position of defense was that this stuff shouldn't come in. They made the same thing clear in the motion for new trial. The stipulation was obviously just a device to not have Hankel testify and to move along. But in contrast to the cases which the state cites, they are totally different. In one of the cases, I'm blanking on the name, but an Illinois Supreme Court case involving drugs, the defendant didn't move and eliminate, stipulated to the foundation, didn't move for new trial. It was a total waiver, complete. In another case, the defendant introduced jury instructions and then complained on appeal that the jury instructions he introduced were bad jury instructions, and the court said, that's obviously ridiculous. You can't inject error into a trial and then claim error. But that's not what happened here by a long shot because it was clear throughout the proceedings that the defense was objecting and always on the same ground, that a proper foundation had not been laid. Now, the next question arises is, was this error? And for this, one has to consider the Flores, the Tarrick-Taylor case, and the theory of silent witness authentication. I should make clear that at times the state says some things like, the witnesses who viewed the VHS tapes somehow are witnesses that get around the silent authentication theory. That's ridiculous. That doesn't make sense. The idea, in general, in the case of demonstrative photograph or videotaped evidence, the easy way to get it in is to have somebody who viewed the events take a look at the picture and say, this truly and accurately represents what I saw, or view the videotape and say, this truly and accurately represents the conversation I had with the defendant, or whatever. That's the normal way to do it. Now, a problem arises with surveillance tapes because no one is sitting there being a witness when you have a surveillance tape. And the surveillance tape is generally the point of it. It records something that no one saw at the time, or no one was noticing at the time. So for that, you have the silent witness authentication theory. And that's what's involved here, silent witness authentication, not real witness or actual witness authentication. Here, the Tarrick-Taylor case says you look at a number of factors. And in Taylor, there was a very weird situation and a sort of complicated claim by the defense. It was a little camera that went off when there was movement in a room. And the appellate court determined that there was not a good foundation because they were concerned about the times on the tapes and whether it matched when the tape should have turned on and off and some other issues. And the Supreme Court said, we're adopting the silent witness authentication theory, and there's adequate foundation, adequate authentication in this case. But here, this is an extreme case on the other side, much more extreme than the Flores case. Because here, it's just not a matter of possible tampering, contamination, or distortion, or change. It is conceded that out of the one and a half hours, only four and a half minutes are preserved, period. So we have, this is as if we took, there was a photograph that was to be admitted into evidence. Somebody in the state police took his scissors and cut the photograph in half and discarded half the photograph. I would suggest to you that in that instance, as well as in this, that two of the Terry Taylor factors, whether the evidence was preserved and what was the copying or duplication process, those are factors four and six, so outweigh anything else that these tapes should have been admitted. Now, it's true that when you have a lot of material, sometimes the sides can agree, we're only going to use the relevant portions, the jury doesn't have to see all of it, we can agree on edits, that's fine. And a court can say, a whole thing is not going to be played, we're not going to listen to hours and hours of surveillance with nobody there, we're going to save the jury's time and only play the relevant portions. But here, the point is, it's not a counsel determining the relevant portions, it's not a court determining the relevant portions, it is a state police official determining the relevant portions. Now, at the time he did that... Did he or did he just, they didn't stipulate to that, did they? No, they didn't stipulate that he took out the relevant portions. The people that testified to that would be the Sam's Club people. Well, the Sam's Club people testified that basically that they had at some point viewed the hour and a half and that the four and a half minutes caught what they thought were the relevant portions. That was their testimony. That was their testimony. But again, they're not doing that based upon their remembrance of seeing these things. I mean, one of them wasn't even there, plots. In fact, I think both of them weren't there. All they're saying is, we looked at this stuff, we thought we made a judgment as to what was important, and the state police's judgment conforms with our judgment as to what is important or relevant. But they're not actual witnesses saying, I'm illustrating my testimony by this tape because this illustrates what I saw when I was there. They're part of the silent witness authentication chain, and that's fine. I mean, they have knowledge as to what Sam's Club looked like and where the cash was, you know, all this stuff. Counselor, you have two minutes. Thank you. Let me ask you a question. How many motions in limine were there? Actually, there was one motion in limine and a motion for reconsideration because what happened was Looking at your facts, there's a motion in limine and the trial court said part of it can come in, but the whole tape should be made available to the defense, and if the defense wants to play the entire tape, they can do so. Then the Taylor factors were addressed in a supplemental motion in limine, correct? Yes. What happened was, first of all, in the first motion in limine, the Taylor factors were addressed because there were cases that had foreshadowed Taylor, such as the Baltimore case. And the court ruled that the whole tape can come in. The defense was not precluded from admitting the whole tape. Well, the court also ruled that the four-and-a-half-minute DVD could come in, could be played, and then what they said is if you can view, what he said was if you can view the whole one-and-a-half hours, then you can play anything else from the one-and-a-half hours you want. Did everybody know? The supplemental motion in limine was never set for hearing or argued in front of the court regarding the Taylor factors. So how do we know defense counsel didn't review the entire tape and then enter into the stipulation? How do we know that? Well, first of all, we know that because it was agreed both at, if you look at the trial record, it's agreed that the tapes are unviewable, and the jury never viewed them. They introduced the actual VHS tapes. And the same representations were made in the motion for new trial, and the state never said, oh, by the way, we figured out how to view it. They viewed it before trial. They were fine. They saw the whole one-and-a-half hours. So I don't think that's accurate to the record. Everything in the record suggests, well, tells you that this view is correct. Now, I would not agree that the Tarrick-Taylor case was basically raised in a motion to reconsider the first ruling because it came down about seven days after the court had ruled. And it's true there's a change in defense counsel, and the motion for reconsideration was never set. But the same things that the Tarrick-Taylor case said, and you can read the argument on the motion to eliminate, were said, were foreshadowed in People v. Baltimore, and were said and argued to the court extensively. That was exactly what they said, four-and-a-half minutes, not enough. We can't see the whole thing. And the court made some conclusion, you know, statewide, you see if the state police can do something. But there's no evidence that that was ever taken up or anything was ever done. So we think the issue is preserved, and the DVD should not have been admitted. It's an extreme example and will not apply in many cases, I imagine. But in this particular case, where you take only four-and-a-half minutes out of an hour-and-a-half, where the selection is done by a state police official with no input from the defense or, for that matter, the prosecution, then the integrity of the real evidence has been destroyed. There's a reason for authentication, and the reason is we want to make sure that what we're seeing is something that should be, is not a selection or a biased view, but something that should be played in court, that it is what it says it is. Thank you. Ms. Duffy? Good afternoon, Your Honors. First I'll address the waiver argument that the state has made. The facts of this case are there was a motion in limine filed. It was argued it had to do with the VHS tapes. The motion in limine was denied. There was a subsequent supplemental motion in limine filed, citing the Taylor case from the 2nd District, the appellate court opinion. Then counsel withdrew from the case. We have substitute counsel. Trial judge advises new counsel, you may modify or supplement any pending defense motions. That was never done. During the trial, when exhibits 1, 2, and 3 were offered, there was no objection made. In fact, defense counsel stipulated, he entered into a stipulation, which includes not only what if Steve Hinkle were called to testify, but he would further testify that the video footage contained on the DVD marked People's Exhibit 3 is a fair and accurate depiction of video footage from People's Exhibit 1 and 2. There was testimony at trial from two Sam's Club employees. They both viewed these VHS tapes. They testified, Mr. Plotz testified that it was part of his job to work with the multiplex VHS surveillance system. And the question is, you've got the two employees who saw it, the hour and a half. Yes. You've got a trooper who saw the hour and a half. Yes. You don't have a defense attorney being able to see it. Is that a problem? I mean, why not? By the time it comes around to his being able to see it, he can't see it. I mean, there seems to be just something almost radio-ish about it that bothers me. Unless, of course, and I don't know why defense counsel didn't see it. That is not in the record, whether it was defense counsel number one or defense counsel number two. It appears to me that defense counsel number two made no attempt to view anything. He entered into a stipulation. What is the time of the moment that the tapes became unviewable in terms of these motions? Right. It appears when they argued the first motion in Lemony, they were talking about the VHS tapes and that they would not be offering the VHS tapes in their entirety as evidence that they were going to send these tapes to the state police to have them transferred to a DVD. That is at the time the judge denied the motion in Lemony. That's when he stated, if you don't like what's on the DVD and you want to play the rest of it, you can't. That issue never arose again after they were downloaded to the DVD. When did the non-coverable aspect of this tape become known? I think there was, well... It was not at the time the judge ruled on the motion in Lemony. No, not the first motion in Lemony. Since the officer didn't testify, I don't know what he was asked to do. I believe he was asked to download any relevant material from the VHS system to a DVD. There's testimony that all of the information on the DVD had to do with the defendant. He did not download irrelevant material that would have been... That may well be true. I'm not saying it's not. But don't you think that the defendant, the attorney, should have had an opportunity to make that decision for himself or herself? We don't know that he didn't have that opportunity. So you're saying that he did have that opportunity, or just that we don't know that he didn't? We don't know that he didn't. I don't know when it was determined that they changed the system, that they couldn't be played at the store. But nevertheless, once the store turned these VHS tapes over to the state's attorney and turned them over to the state police... Now, the truth is that if you had wanted everything on those VHS tapes, could the state police have downloaded everything? Yes, they could. But they didn't because they found other portions of that VHS tapes irrelevant to what they were asked to do, which is show every time the defendant appeared in Sam's Club on the videotapes. From the time he paid for the first TV... Well, you're making a statement that that was what was requested. And maybe it's likely that that happened. Maybe it's very likely that that happened. But don't you think defense counsel should have had a view to make his or her own decision? I don't know that he didn't. The judge told him, you know, if you want to play the entire thing, you could do that. Could he have requested the state police download all those VHS tapes onto a DVD? Yes, he could. But that's not what he did. What he did was stipulate to what the state had. He stipulated that that was a verified four minutes. That's all he did. That's correct. He didn't say, this is what I saw on these tapes. That's correct. Blah, blah, blah. That was left to the employees. That's correct. The employees, we submit, authenticated what was on the... They testified the VHS tapes accurately depicted occurrences on October 6th of 2007, that the device was working properly. And I note that in People v. Taylor, that's the Illinois Supreme Court case, which I'm going to submit to this court, is dispositive of this issue in every respect. They do discuss six different factors. Counsel has argued that particularly factors number four and six apply here. Number four is showing the manner in which the recording was preserved, in other words, a chain of custody. The Illinois Supreme Court noted that beyond the fact that chain of custody, if there is a problem with chain of custody, that goes to the weight of the evidence, not its admissibility. But there was a chain of custody established. Michael Plotz took the VHS tapes directly to the state's attorney's office. The state's attorney's office turned them over to the state police, and then you have the stipulation that Hinkle had the tapes, and he processed them and downloaded them. The chain of custody is established. And the sixth criteria that they looked at had to do with, in part, copying stored data. And when you download from one device to another, what you, in effect, are doing is producing a second original of the first. But more importantly, they said that deletions or editing may be necessary to make a DVD admissible regarding, for example, irrelevant material. So to edit these tapes and put what you believe to be relevant on a DVD was not a violation of the rule of evidence. And also, they say, they go on to say in paragraph number 44 in Taylor, that editing may exhibit, may help the trier fact more readily understand the evidence that they're shown. It may be more useful to the trier fact, and that's explicitly true in this case. There is absolutely nothing to be gained from showing videotape of other customers in the Sam's Club. So the way that this case was processed, the testimony at trial, is in line with Taylor completely. And we'll also note that I think counsel did mention, in Taylor, there was no one present when the actual theft took place that viewed the theft. And there didn't have to be. There was a camera set up, there was a motion detector, and the camera caught that. That's where the silent witness theory comes into play. The camera caught it. The camera is the silent witness. One thing I would say about issue number two, defendant didn't respond in his reply brief to his ineffective assistance of counsel claim. We would stand on our brief on that issue. I have nothing further unless the court has any other questions. Thank you, Ms. Duffy. Mr. Richards. Thank you, Your Honor. Your Honor, while Ms. Duffy was speaking, I was looking back over the motion to eliminate. And I would suggest, and also I found there's a court order dated, which is in the record, common law record, October 16, 2008, in which defendant files supplemental motion for discovery and by agreement is granted people to secure and provide copies of videotapes cost to be paid by defendant. Now, much later in the motion to eliminate, what the prosecutor says is he says the tapes, he says at that point it's unviewable. He says, Judge, I actually went out to Sam's at 7 on Monday morning and worked with the individuals there. They actually gave me an old multiplex machine, which we aren't able to watch the videos on. So that was the extent. I mean, he knew he had a problem, and that was the extent he was doing to try and solve it. The record is that it was never solved. And the third counsel who did the motion for new trial said so, that there was no, that the VHS tapes were unviewable. And I think it's also mentioned in the trial itself. They're admitted as these objects, but nobody can view them. So I don't think these issues are truly in dispute, in dispute whatsoever. There is a kind of, you know, maybe a due process or a Brady component to this. But I think the due process or Brady component is picked up. That's the point of having requirements for authentication and identification. It's because of this issue, you know, if you put something in court, you have to show that you haven't changed it substantially in a real way. Four and a half minutes from an hour and a half is a big, big change. And for that reason, Your Honors, we would ask that Sanjay Bhatia's conviction be reversed, the case be remanded for a trial without this evidence, or if they can figure out a way to get the whole one and a half hours, God bless them. But in any event, Sanjay Bhatia deserves a new trial. Thank you. You haven't couched this issue in terms of ineffective assistance at counsel. I keep wondering why counsel would enter into a stipulation if he hadn't viewed the entire tape. Justice Liston's approach, you know, is equally valid, but my focus is a little different. He signed a stipulation without viewing the tapes, if your version is correct. Why not couch that in terms of ineffective assistance? I have a very direct answer to that question. We have filed a post-conviction petition alleging ineffective assistance. I didn't file it as this part of the appeal because the post-conviction petition, which I have, and which is filed in the court in Peoria, has material outside the record. For example, that Sanjay Bhatia himself... Then we don't need to know any of that. Okay. Well, I will just state for the record that... You've answered my question, and I appreciate it. Thank you. Thank you. Thank you very much. In the stipulation... Let me get this clear because now it will confuse you. The stipulation as to the trooper was merely on authentication of what the trooper did. Maybe authentication is not the right word. Authentication is not the right word. It just mirrors what the trooper did in transferring the hour and a half to the four minutes. Correct. That's all he did. He wasn't making a statement. That's what happened. No, and he never testified to what he saw on the tape. He just... The stipulation was he picked out four and a half minutes. I mean, obviously he's doing it on some sort of principle of relevance in his own mind. I mean, that's common sense. But we don't know if his view of relevance is the legal view of relevance or the view of relevance that a defense counsel would have had, and that's the problem. It's like the decision as to what is being admitted is being deferred, is being given to a state trooper and not to court and counsel. All right. Thank you. Thank you. We're going to stand in recess, I think, for lunch, and we'll be taking the matter under advisement and rendering a decision without undue delay. Court is now in recess.